Good morning, Your Honor. My name is Angela Bean, Your Honors, I should say. I'm representing the petitioner, Neri Alvarez, in this matter, and I'd like to reserve two minutes, if I could. This case involves a pro se applicant for asylum who lost his attorney approximately eight years after he first hired her. She withdrew about a month before the hearing. Actually, it was a few months, but the case was reset to an earlier time frame by the immigration judge after having the same person be his counsel. He was scheduled to appear. He did appear in front of Judge Marks, And the issue here is a sort of overlapping issue of due process as it relates to a request for continuance and the right to counsel. There is also a subissue having to do with case continuation issues for the court itself, whereby the local offices around the country are pressured by the EOIR in Washington to complete their cases within a certain time frame. Mr. Alvarez, at his hearing, definitely expressed a desire to have an attorney. The immigration judge talked to him a little bit about that. He said that he had called a few attorneys, but no one had called them back to tell him they were interested in a hearing in one month. The immigration judge said to him that she didn't think he could find an attorney in a month anyway, so she wanted to proceed at that point. Did he make an express request for continuance? Not in so many words, but I think in this case it was clear that the immigration judge should not be allowed to say that his inadequate response indicates a waiver of a right to counsel. She did not make a direct inquiry, and he did not consent going forward without counsel. What are we to make of the facts in this case, that his counsel had been unable to contact the Petitioner for over a year, and the Petitioner knew that he had no contact with counsel six months before the hearing? Well, Your Honor, I actually don't agree with that. And I don't agree with that in part because I have had consistent counsel contact with my client, and he's quite diligent. There's a letter in the file actually to Ms. Lemus telling him when he moved. It's quite an articulate letter and detailed for someone with a sixth-grade education. This woman has a history, had a history of continuing this case for quite a long time, a few times. The government actually continued it for a year for fingerprinting, but she continued it once because she had a broken arm. She continued it another time because she was also a nurse in Nevada and had a work conflict and didn't want to come to the regular hearing. So she was a lawyer and a nurse. Mr. Alvarez was always ready for his hearings. He didn't continue this case. He was always there. And at the time that the case was scheduled for 2004, it was moved back to 2003. And the judge says that she has to go forward, not because he was dilatory, but because she has case completion guidelines that she has to pay attention to from Washington. That actually was brought up in the context of him asking about a piece of evidence that was introduced at the hearing by the government. The country reports were introduced into the hearing. My client said, what's that? And the judge distracts right there, and instead of answering his question, talks about at that point his inability to get a lawyer in a month. It's quite interesting because he asks a fairly direct question, and she doesn't answer it at all. So I think that it's not an issue, really, of the Respondent, the Petitioner, being irresponsible. You say that the attorney was inaccurate in saying that she couldn't contact Alvarez for a year, but you haven't answered my question as to what significance we should give to the fact that Alvarez knew that he hadn't contacted his attorney for over six months before the hearing. Well, I have to say to that, Your Honor, that the lawyer really should prepare the client for hearing. And, yes, they have a mutual obligation to take care of business so that he's prepared. The history of this case from 95 until the hearing in 2003 is one of delayed and protracted continuances. So when he does come to his hearing, and he comes early, a month after she withdraws, after trying to find counsel, I think he has somewhat of an expectation that he ought to be able to have a lawyer at his regular hearing and asks for that. Instead, the judge decides then and there, not really necessarily in his interest, as is her obligation to protect when it's a pro se case, but in her interest to complete the case because she has an obligation from Washington. So while I agree with you that the Respondent or the Petitioner does have to cooperate with counsel, it seems that at the ultimate hour it all falls on him when the parties or the representatives in the case all are proceeding on their own agenda. The attorney goes off to Kansas. But he's got one month's notice that his attorney has withdrawn. He's got a month to find another attorney. And the judge tells him she doesn't think he's going to be able to do that. They don't even have a discussion about it. That's her opinion. But does he say, I've got somebody who's ready to represent me, but I need another month or I need four months or I need any time at all? He doesn't say that. Well, the judge tells him, I don't think you're going to find an attorney, do you? And says, I'm going to hear what you have to say today, and marches forward. He, I would submit, doesn't even have an opportunity to engage in a discussion because she tells him what is possible and what is not possible. And I don't think that's fair. And if I may ---- Does she have an obligation to say anything along that line? Along what line, Your Honor? Doesn't she have a ---- If he's got a month to get an attorney and he hasn't got an attorney, and if she hadn't said anything about his possibilities of getting an attorney, and he doesn't make a motion to continue to get an attorney, why can't she just go forward with the case? Well, she might be able to. The question might be at that point whether or not she does that properly, whether or not there's due process observed in the course of the hearing. Does she actually allow him to present his evidence? Does she allow him to understand the evidence when he asks about the evidence? She segues into you don't have an attorney and you're not going to get one. This is the evidence that the government's introduced. Let me tell you what that says when he specifically asks. And that's a separate issue from a continuance request. That's actually a fair and fundamental hearing issue. I think that this case involves both of those things, that he was effectively denied counsel and a fair hearing. Can I direct you towards the prejudice prong? Is there any prejudice that is shown here by his failure to have counsel? I would say that there is prejudice. What is the evidence that counsel would have produced had counsel been retained? Well, Your Honor, as this Court knows and has held, we don't have to say exactly what that evidence might be had he had prior counsel. This case had been going on for six years. It had been. And, in fact, his attorney didn't submit anything new all that time. But there's a great deal at stake in an asylum proceeding where someone may be going back to a situation of persecution. And because this Court has said in more than one case to understand the legal nature of the inquiries about his case put to him, which he clearly did not, when we're talking about an attorney who could make the tie-in, the nexus tie-in between, as Mr. Jobes said earlier, a social group argument, a political opinion group argument, that we are talking about threading the labyrinth in a very complicated situation with a man with a sixth-grade education. I don't think he could have articulated it. This gentleman had was a victim of three recruitment attempts prior to 1993 in Guatemala. He came shortly after that, Your Honor. He had been here this whole time. So we have dozens of cases which say that recruitment attempts do not equal persecution, number one. And secondly, since 1993, the changed country conditions of peace that's been accorded in Guatemala have eliminated a great potential for political persecution. So my question to you is, you've lived with this case. Yes. What evidence have you now that should have been presented then? Your Honor, I've represented him in this case. And at this point, we have not filed a motion to reopen, if that is your question. However, I do believe that there's more than a forced recruitment issue in this case, and the asylum office is still granting Guatemalan asylum cases in spite of the peace accords. Unfortunately, the timing for Mr. Alvarez is that he doesn't qualify under the Nicara legislation, because he came just a little bit after that. However, he does deserve his day in court. He deserves the right to present his evidence. And forced recruitment isn't the only issue when we're talking about this. He had family in the national police force. There's cases that ---- What about his family in the national police force? Yes. What evidence is there that you think should have been presented which shows prejudice? Your Honor, the evidence that would be presented would be additional grounds of asylum, his ability to ---- I realize we're outside the record. I know you're being careful. But to give us, I think what Judge Bay is actually asking here is, what would you put on today, generally speaking, if we granted relief, hypothetically? And you're not bound to it. We realize it's outside the record. But I think we just want a glimpse at whether this is a real case, aside from what we see in the four corners of this. And we understand that you're not bound by that, nor is the government by what you say. But can you give us an idea? Yes. The first thing I would do, obviously, is discuss with my client in great detail what has happened since then to today. I would talk to him about every family member he has. I would ask him about other, obviously, if there were other bases to reopen, I would explore that now. And what I mean by that is if he were married to a citizen now, things would be different. He's a single man with no children. And I would put forward a plausible asylum case for him, and he would have his day in court. And Judge Marks, his judge, is not a judge who is foreclosed to a generous view of asylum. But she couldn't grant this case based on what he said because there was nothing there. It was such a stale record. And I believe that. And I'm sad to say that. Well, I guess to cut to the chase, you think you have a case? Yes. I mean, on the merits. Absolutely. Do you want to explore that any further? No further questions. Thank you. We're a little bit over time, so we'll give you some time for a bottle of wine. Okay. Is there from the government? Yes. May it please the Court, Kristen Edison for the Attorney General. In this case, the immigration judge acted well within her discretion in deciding not to continue Mr. Alvarez's case. As this Court has noted, he has had over eight years to retain counsel and to present his merits claim to the immigration judge. The thing I found a little curious about this was it appeared that the decision not to continue was not necessarily made in the judge's discretion, but because the judge was ordered to finish the case. Is that right?  Well, you're right. Let me read it specifically, and you can tell me what you think happened. Because your case is so old, I have instructions to complete it by the end of September. From whom? Right, Your Honor. And there's no other information in the record that indicates exactly what the immigration judge is talking about. Well, what do you think? I think that it's possible that, and I've had the chance to speak to an attorney at the Executive Office of Immigration Review. And we don't want to go outside the record. But according to what you know about DOJ regulation. Thank you, Your Honor. It's possible that it could have been an immigration judge directive or a directive to the immigration judges, but it's also possible that this could have been the individual immigration judge's case completion goals. And as you noted, her statement is the only evidence on the record. Wasn't there some dating in the record? Didn't she say, I've got instructions to finish these cases by September? And then she held the hearing in August. She moved it up to August. Right, Your Honor. I think that the hearing date of August 18, 2003, was set when she denied counsel's request to withdraw in July. She denied it in July. But didn't she mention she had to finish these cases by September? Right. I believe that's the quote that Judge Thomas gave. Well, he said this case. I think Judge Vann may be referring to something else. I don't believe that there's any other. I believe that was the only statement in the record. I have instructions to complete it by the end of September. And I don't think you're going to get an attorney before that. I mean, the reason I ask is if there's the immigration judge is saying, well, this is just too old and you've had too many continuances, and I think it's just a bad faith, that may be one thing. Immigration judge is saying, I can't give you, I don't have any discretion to give you a continuance because I'm instructed to complete the case and you can't comply, so let's go forward. Now, could it be an aspirational goal of one of the backlog reports, or could it be an instruction as we've seen in some other cases? We don't know, right? And you don't have any means of knowing based on procedures. That's correct, Your Honor. Okay. But as Judge Baer has pointed out, in this case, really Mr. Alvarez can't succeed on any due process claim because he can't demonstrate any prejudice. We've talked about... How do we know that in the abstract? Because we only know from what he said at the hearing. Right. He came to the hearing. He was obviously not going to put on any documents. He would have had to submit those ahead of time. Go ahead. Sorry. Oh, no, go ahead. First, I would note that there were documents that were submitted while Mr. Alvarez was represented. I think at page 69 of the record, the immigration judge accepts documentary evidence submitted by both sides, and that was, I believe, at one of the very early hearings in 1995. So although Mr. Alvarez didn't submit anything when he appeared before the immigration judge, and I also note that, I mean, he also commented that he didn't have any evidence to submit at this time. He also noted that he generally didn't keep any documents from Guatemala. But in response to your question, just generally with regard to the prejudice inquiry, and as the immigration judge held this case was, Mr. Alvarez's case was controlled by the Supreme Court's decision in Elias Zacharias, but Mr. Alvarez's testimony really focused on violence in the abstract and a difficult life in Guatemala. And, I mean, I would refer this Court's attention to pages 53, 69, and 74, and 75 of the record. He also said that gangs and organized crime, specifically drug trafficking, was responsible for the violence in Guatemala, not guerrillas. And that's also pointed out on pages 78 and 79 of the record. That's responsive to Your Honor's question. Well, I think I was probably headed to a different point, which is we know what he said, and we know the implications of Elias Zacharias. We do have some forced recruitment cases where we've granted relief under different circumstances, brajones and boron may be examples of that. The difficulty I have in denial of counsel cases, particularly when saying you have to go ahead today, is we're dealing with an unknown. We don't know what he could have put on, because all we have is what he did put on, and so it's kind of a catch-22. We don't know whether he has a different case. We don't know whether he had a different theory to present. Now, normally, this is an old, old case. There's no doubt about that. What gives me a little pause in this one is, after all of, he has his attorney representing him for all these years and appears not to have done a very good job, and then there's, instead of saying, well, I'm going to give you six weeks or two months, and then that's that, he says, no, you've got to go forward today because I have a deadline to meet. That's what seems to be a little bit arbitrary. That's my general reaction to it. Right. I understand, Your Honor. However, in this case, Mr. Alvarez wasn't forced to go ahead. He wasn't completely surprised that he might have – couldn't have been completely surprised that it was reasonable that he might have to go forward. He was given, as counsel has pointed out, about a month to prepare for this hearing. The record doesn't show – I mean, the record simply indicates, as he said, called some attorneys and left messages but didn't hear back. Well, she sends a letter just withdrawing in July, right? What, three weeks before or a whole month? Is that right? Well, right. I think the letter is dated July 15th. Okay. And that's at page 216 of the record. And as Judge Bea had pointed out, the record also does indicate that Mr. Alvarez lost touch with his attorney. I mean, he had been part of the legal proceeding – legal proceedings for a big chunk of time, so he must have known that this is his and his attorney's responsibility to prepare the case. And I'd like to – Mr. Alvarez did request a continuance once. That's page 255 of the record. I mean, and he indicates that the reason for that was he had lost touch with his attorney, and he indicated that he needed a certain document. So I think that that fact is important in this case. Okay. If I have so many questions, I'd be happy to take them. Any further questions? Okay. Thank you, Your Honor. Thanks. One thing I'd like to point out is in the BIA's decision, they make an inaccurate statement about how long he didn't have a lawyer. I'm sorry. I can't hear you. In the BIA's decision, they make an inaccurate statement about how long he didn't have a lawyer. The board said he didn't have a lawyer for six years. Right. And that may have actually influenced a bit how they felt or how they decided, not how they felt. The evidence submitted that the government referred to on page 69 was submitted at the August hearing. And, again, I'd just like to repeat that the hearing actually had been moved back. The case completion guidelines for September required that the judge move the hearing from February of 2004 back to 2003, and she put it into August. So the judge, he may have gone to the hearing that day thinking he should have had a little more time anyway. Wasn't he advised in July, though, that he had a hearing? He appeared in July. I think he was advised that his attorney withdrew and his case had been reset until August. Yes. That's what he was advised of and why he made the phone calls. As I remember from my notes, he was given his attorney withdrew and he had a month before from that point to the hearing. Yes. And that's when he started looking. And as someone who's represented people for 23 years, a month for a final hearing like this is not much. If there are no more questions. No, I have it straight in the record now. Thank you very much. The case is here to be submitted. Thanks for your arguments. It's always hard to be last on the calendar, and we appreciate that as well. We'll be in adjournment this morning.
judges: Goodwin, Thomas, Bea